UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20371-CR-UNGARO/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

HUGO ALEJANDRO MACUASE ANGULO,
LUIS MIGUEL ALMEIDA MACUASE,
MOISES ADOLFO CUERO ANCHICO,

      Defendants.
_____/

### REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon the following motions:

(1)    Defendant Moises Adolfo Cuero Anchico's ("Anchico") Motion to Dismiss for Violation of Due Process (hereafter, "Motion to Dismiss/Due Process") [D.E. 20];

(2)    Defendant Luis Miguel Almeida Macuase's ("Macuase") Motion to Dismiss the Indictment (hereafter, "Motion to Dismiss/Constitutionality") [D.E. 21]; and

(3)    Government's Motion for a Pre-Trial Determination of Jurisdiction by the Court (hereafter, "Motion to Determine Jurisdiction") [D.E. 30].

These matters were referred to the undersigned by the Honorable Ursula Ungaro, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 22 & 31]. The undersigned held an evidentiary hearing on these matters on July 25, 2016.[1]

For the reasons stated below, the undersigned respectfully recommends that the Motions to Dismiss be DENIED and the Motion to Determine Jurisdiction be GRANTED.

---

[1] On July 12, 2016, the Court granted Defendant Hugo Alejandro Macuase Angulo's ("Angulo") Motion to Adopt the Motions to Dismiss [D.E. 23, 26]. At the July 25th hearing, the undersigned granted Anchico's and Macuase's *ore tenus* motions to adopt each other's Motions to Dismiss.

## PROCEDURAL BACKGROUND

On May 20, 2016, Defendants Angulo, Macuase and Anchico (collectively, "Defendants") were charged by way of indictment with the following offenses:

> Count 1 (all Defendants) - Conspiracy to possess with intent to distribute a controlled substance on or about May 1, 2016, while on board a vessel subject to the jurisdiction of the United States, with the Southern District of Florida being the district at which Defendants entered the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(b).
>
> Count 2 (all Defendants) - Possession with intent to distribute a controlled substance on or about May 1, 2016, while on board a vessel subject to the jurisdiction of the United States, with the Southern District of Florida being the district at which Defendants entered the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2.
>
> Count 3 (Angulo) - As master of a vessel subject to the jurisdiction of the United States on or about May 1, 2016, failing to obey an order by authorized Federal law enforcement officers to heave to the vessel, in violation of 18 U.S.C. § 2237(a)(1).

See Indictment [D.E. 6].[2]

In the Motion to Dismiss/Constitutionality, Defendants argue that the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501 *et seq.*, pursuant to which they are charged, is unconstitutional on its face and as applied. In the Motion to Dismiss/Due Process, Defendants argue that they were denied due process from the time of their arrest at sea on May 1, 2016 until they first appeared before a Magistrate Judge in the Southern District of Florida on May 16, 2016. In its Motion to Determine Jurisdiction, the government requests that the Court make a pre-trial determination that the vessel on which Defendants were arrested at sea is subject to the jurisdiction of the United States.

## STATUTORY FRAMEWORK

MDLEA provides in pertinent part:

---

[2] The alleged controlled substance is five or more kilograms of cocaine. Id.

2

**(c) Vessel subject to the jurisdiction of the United States.--**

   **(1) In general.**--In this chapter, the term "vessel subject to the jurisdiction of the United States" includes--

      **(A)** a vessel without nationality;

                        \*\*\*

**(d) Vessel without nationality.--**

   **(1) In general.**--In this chapter, the term "vessel without nationality" includes--

                        \*\*\*

      **(B)** a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and

                        \*\*\*

**(e) Claim of nationality or registry.**--A claim of nationality or registry under this section includes only--

   **(1)** possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas;

   **(2)** flying its nation's ensign or flag; or

   **(3)** a verbal claim of nationality or registry by the master or individual in charge of the vessel.

46 U.S.C. § 70502(c), (d) and (e).

   **(a) Jurisdiction.**--Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

   **(b) Venue.**--A person violating section 70503 or 70508 of this title shall be tried in the district court of the United States for--

      **(1)** the district at which the person enters the United States; or

      **(2)** the District of Columbia.

46 U.S.C. § 70504(a) and (b).

> **(a) Prohibitions**.--While on board a covered vessel, an individual may not knowingly or intentionally--
>
> (1) manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance.

46 U.S.C. § 70503(a).

> **(a) Violations**.--A person violating paragraph (1) of section 70503(a) of this title shall be punished as provided in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 960). However, if the offense is a second or subsequent offense as provided in section 1012(b) of that Act (21 U.S.C. 962(b)), the person shall be punished as provided in section 1012 of that Act (21 U.S.C. 962).
>
> **(b) Attempts and conspiracies**.--A person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503.

46 U.S.C. § 70506(a) and (b).

## **FINDINGS OF FACT**

The following witnesses testified at the July 25th evidentiary hearing: Drug Enforcement Administration ("DEA") Special Agent Jamey Gavalier ("S/A Gavalier"); and U.S. Coast Guard Lieutenant Matthew Pekoske ("Lt. Pekoske"). The undersigned finds that the testimony of S/A Gavalier and Lt. Pekoske was credible and unbiased. The undersigned admitted into evidence Government Exhibit 1 and 2, which are pictures of the vessel on which Defendants were arrested at sea. Post-hearing, the Government filed at the direction of the undersigned and without opposition from Defendants the U.S. Coast Guard reports regarding the May 1, 2016 interdiction of the vessel on which Defendants were arrested at sea. That document has been designated as Government Exhibit 3. See Exhibit & Witness List [D.E. 36]. The undersigned makes the following findings of fact based on the credible testimony of S/A Gavalier and Lt. Pekoske and Government Exhibits 1-3.

A.  **Interdiction and boarding**

1. On May 1, 2016, the U.S. Coast Guard Cutter *Mohawk* was deployed in the Pacific Ocean off the coast of Central America on an interdiction mission, with Lt. Pekoske serving as its operational officer and third in command of the vessel.

2. In that capacity, Lt. Pekoske was in charge of command and control of all of the *Mohawk*'s assets, including deployment of the cutter's small boats and helicopter, and coordination with other aircraft or friendly assets supporting the *Mohawk*'s mission.

3. A Maritime Patrol Aircraft ("MPA") identified a vessel of interest to the *Mohawk* located in international waters, 290 nautical miles south of the Guatemala/El Salvador border.

4. The MPA reported to the *Mohawk* that there were no visible indicia of nationality for the vessel of interest (hereafter, "go-fast vessel"). See Gov't Exs. 1 & 2.

5. The *Mohawk* launched its helicopter and small boat to make contact with the go-fast vessel.

6. The crew of the helicopter hailed the go-fast vessel on maritime channel 16 with an order to stop, maneuvered the helicopter so that its presence was readily apparent to the crew of the go-fast vessel, and illuminated a blue law enforcement light and a white light over the Coast Guard shield on the helicopter's tail.

7. The go-fast vessel, which was approximately 30 feet in length, did not stop.

8. The helicopter then fired 28 rounds of warning shots just forward of the go-fast vessel's bow as a warning to stop for boarding. Again, the go-fast vessel did not stop.

9. The helicopter then fired one round less than one foot behind the outboard engines as a further warning.

10. At that point, the go-fast vessel stopped and its crew began throwing bales of

5

apparent contraband in the water. This event is hereafter referenced as Dead in the Water # 1 ("D.I.W. # 1").

11. After all the bales had been thrown overboard, the go-fast vessel continued making way.

12. The helicopter then maneuvered back towards the go-fast vessel and fired additional rounds that disabled the outboard engines, making the go-fast vessel stop. This event is hereafter referenced as Dead in the Water # 2 ("D.I.W. # 2").

13. While the helicopter hovered over the go-fast vessel, the boarding team on the small boat took positive control of the go-fast vessel.[3]

14. Three members of the boarding team, which included a Spanish-speaking member, embarked on the go-fast vessel, placed the three crew members in handcuffs for officer safety, and conducted a sweep of the vessel for onboard indicia of nationality but did not find any.[4]

15. Thereafter, all interactions with the crew members of the go-fast vessel were conducted by using the services of the Spanish-speaking member of the boarding team.

16. The boarding team first asked all three crew members of the go-fast vessel who was its master. Angulo claimed to be the master.

17. The boarding team then asked Angulo where the go-fast vessel was registered or did he have a claim of nationality for the vessel. Angulo made no claim of nationality. Nor did any of the other two crew members.

18. The boarding team then asked the three crew members of the go-fast vessel if they had a claim of nationality for themselves. All three claimed to be from Ecuador.

---

[3] Coast Guard small boats are also referred to as OTH's, meaning "over the horizon."
[4] Prior to boarding, both the helicopter crew and the OTH crew had surveilled the go-fast vessel for visible indicia of nationality, such as a flag or markings on the hull, but did not detect any.

19. With this information, Coast Guard District 11 in Alameda, California granted permission to the *Mohawk* to treat the go-fast vessel as a vessel without nationality and continue the boarding process.

20. Ten ION SCAN swipes were taken on the go-fast vessel to check for trace amounts of narcotics, six of which yielded positive results.

21. Eighteen bales of cocaine, which were strung together with a line and whose GPS location had been marked, were recovered from the water.

22. Upon inspection of the go-fast vessel, the boarding team found the bilge pump to be inoperable. On this basis, a decision was made to scuttle the go-fast vessel.

**B.   Transportation of Defendants to the Southern District of Florida**

23. On May 1, 2016, upon completion of the interdiction and boarding process, Defendants were transferred to the *Mohawk*.

24. Defendants were then transferred to the U.S. Coast Guard Cutter *Seneca* because the *Mohawk* needed to make port in Guatemala for refueling and keeping Defendants aboard as U.S. detainees would have required a 7-day clearance process.

25. From the *Seneca*, Defendants were transferred to the U.S. Coast Guard Cutter *Vigilant*, which was the next cutter scheduled to travel through the Panama Canal to the Atlantic Ocean. The *Vigilant* gathered a total of twelve U.S. detainees for the Panama Canal crossing.

26. Defendants and some of the other detainees aboard the *Vigilant* were delivered to the U.S. Naval Base at Guantanamo, Cuba.

27. On Friday, May 13, 2016, S/A Gavalier took custody of Defendants from the U.S. Coast Guard at Guantanamo and flew them to the Fort Lauderdale International Airport in the

Southern District of Florida.[5]

28. That same day, U.S. Magistrate Judge John O'Sullivan signed a Criminal Complaint charging Defendants with violations of 46 U.S.C. §§ 70503(a)(1) and 70506(b). See Criminal Complaint [D.E. 1].

29. On Monday, May 16, 2016, Defendants made their initial appearances in Miami federal court [D.E. 2-4].

30. As previously noted, Defendants were indicted on May 20, 2016 [D.E. 6].

## CONCLUSIONS OF LAW

### 1. *Motion to Dismiss/Constitutionality*

Defendants first argue that Section 70504 of MDLEA, which makes "[j]urisdiction of the United States with respect to a vessel subject to this chapter [] not an element of an offense," and provides that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge," renders the statute unconstitutional, in violation of the Due Process Clause and the Sixth Amendment right to jury trial. However, the Eleventh Circuit Court of Appeals has already decided this precise issue and determined that this jurisdictional provision does not render MDLEA unconstitutional. See United States v. Tinoco, 304 F.3d 1088, 1112 (11th Cir. 2002) (concluding that there is no constitutional infirmity in MDLEA "because the jurisdictional provision here is not a traditional element, or otherwise an essential ingredient, of a criminal offense"). Defendants acknowledge this binding precedent but state that they are raising this issue for further review due to a circuit split arising from the Ninth Circuit Court of Appeals' contrary decision in United States v. Perlaza, 439 F.3d 1149 (9th Cir. 2006). See Motion to Dismiss/Constitutionality [D.E. 21 at 5-7].

---

[5] Defense counsel questioned why Defendants were delivered to Guantanamo rather than proceed with them to Key West. Lt. Pekoske testified that this would have delayed their arrival in the Southern District of Florida by two to three days beyond May 13, 2016.

Defendants next argue that MDLEA is unconstitutional as applied to them due to a lack of nexus between their alleged drug trafficking offense and the United States. According to Defendants, MDLEA is not a valid exercise of Congress' power pursuant to the Felonies Clause of the Constitution, namely, Article I, Section 8, Clause 10. Defendants recognize that this issue has also been decided adversely to them by the Eleventh Circuit in United States v. Campbell, 743 F.3d 802 (11th Cir. 2014), but state that they raise this argument for purposes of further review relying on various scholarly publications. See Motion to Dismiss/Constitutionality [D.E. 21 at 7-13].

Given contrary Eleventh Circuit precedent as to both prongs of the Motion to Dismiss/Constitutionality, the undersigned respectfully recommends that it be denied.

### 2. *Motion to Determine Jurisdiction*

The government requests a pre-trial determination that the go-fast vessel is subject to the jurisdiction of the United States. As set forth in the foregoing factual findings: neither the master nor the two other crew members of the go-fast vessel made a claim of nationality for it; the go-fast vessel had no visible indicia of nationality in the form of a flag or hull markings; and the go-fast vessel had no onboard indicia of nationality in the form of documentation. Therefore, the undersigned concludes that the go-fast vessel is a vessel without nationality and subject to the jurisdiction of the United States, pursuant to 46 U.S.C. § 70502(c), (d) and (e). Hence, the undersigned respectfully recommends that the government's Motion to Determine Jurisdiction be granted and that the Court make a pre-trial determination that the go-fast vessel is subject to the jurisdiction of the United States.

### 3. *Motion to Dismiss/Due Process*

Defendants argue that they were denied due process for 16 days, from their arrest on May 1, 2016 to their initial appearance before a federal Magistrate Judge on May 16, 2016.[6] Defendants contend that the 16-day period constitutes undue delay, relying on Rule 5 of the Federal Rules of Criminal Procedure, which provides, in pertinent part:

> A person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise.

Fed. R. Crim. P. 5 (a) (1) (B).

> If a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed.

Fed. R. Crim. P. 5 (b).

In their written submission and at the July 25th hearing, Defendants argued that the government should have presented a criminal complaint to a Magistrate Judge and arranged for their initial appearance earlier, via electronic means. To this end, defense counsel extensively questioned Lt. Pekoske regarding the *Mohawk*'s electronic communication capabilities. However, MDLEA's venue provision specifies that "[a] person violating section 70503 . . . of this title shall be tried in the district court of the United States for--the district at which the person enters the United States." 46 U.S.C. § 70504(b). In other words, presentation of a criminal complaint to a Magistrate Judge and initial appearance cannot not take place until venue has been established by Defendants physically entering a district of the United States. This renders Defendants' arguments about the use of electronic means for presentation of a complaint and initial

---

[6] Defendants initially argued that the due process denial period lasted 13 days, until issuance of the Criminal Complaint on May 13, 2016 but later supplemented the Motion to Dismiss/Due Process to expand the period to 16 days, until their initial appearance. See Anchico's Supplement to Motion to Dismiss for Violation of Due Process [D.E. 25].

10

appearance meritless.

Defendants also inquired into the potential for landing Defendants in Guatemala, presumably to be flown from there to a U.S. location. However, as testified by Lt. Pekoske, bringing a U.S. detainee to a foreign port is a process that could take as much as seven days. And it is not clear from Defendants' argument, what U.S. government agency should have taken custody of Defendants in Guatemala.

Finally, Defendants questioned the government's decision to prosecute them in the Southern District of Florida rather than a district in California. However, inquiry into this area is foreclosed by prosecutorial discretion.

Having considered Defendants' arguments, as well as the logistics involved in the transfer of Defendants from the point of interdiction (in international waters of the Pacific Ocean, 290 nautical miles south of the Guatemala/El Salvador border) to the Southern District of Florida, the undersigned does not find that a period of 13 days before presentation of a complaint to a Magistrate Judge and 16 days for initial appearance constitutes undue delay and a violation of due process.

Even if the undersigned were to find undue delay as argued by Defendants, the proper remedy is not dismissal of the indictment but suppression of the evidence obtained during the period of delay. United States v. Carruthers, 458 F. App'x 811, 818 (11th Cir. 2012); United States v. Bibb, 194 F. App'x 619, 623 (11th Cir. 2006); United States v. Mendoza, 473 F.2d 697, 702 (5th Cir. 1973). Although Defendants did not seek this relief in their written submission, the undersigned allowed them to orally supplement their Motion to Dismiss/Due Process at the July 25th hearing. The evidence that Defendants contend should be suppressed is the 18 bales of cocaine that were thrown overboard and recovered by the crew of the *Mohawk*.

Defendants claim that they were arrested at D.I.W. #1, prior to the bales being jettisoned from the go-fast vessel. However, after D.I.W. #1, the go-fast vessel continued making way. It was only at D.I.W. #2, when the Mohawk's helicopter disabled its engines, that the go-fast vessel was stopped by the Coast Guard. The undersigned finds that it was at this point that Defendants were arrested, thereby commencing the period of purported delay. Because Defendants do not seek to suppress any evidence obtained from that point forward, there is no evidence to suppress. See United States v. Aguilar Lopez, Case No. 13-CR-20911-BB (S.D. Fla. Sept. 5, 2014) [D.E. 109] (denying as moot alternative motion to suppress evidence for violation of Fed. R. Crim. P. 5(a) where defendant did not point to any evidence gained during period of delay).

## CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Motions to Dismiss [D.E. 20 & 21] be DENIED; that the Government's Motion to Determine Jurisdiction [D.E. 30] be GRANTED; and that the Court DETERMINE that it has subject matter jurisdiction over this action.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have fourteen days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Miami, Florida this 28th day of July, 2016.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Ursula Ungaro
Counsel of Record